Evan J. Smith
BRODSKY SMITH
1310 N. Kings Highway
Cherry Hill, NJ 08034
Telephone:    856.795.7250
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS PRZYBOROWSKI,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTH JERSEY INDUSTRIES, INC., JOSEPH M. RIGBY, SARAH M. BARPOULIS, VICTOR A. FORTKIEWICZ, SHEILA HARTNETT-DEVLIN, G. EDISON HOLLAND, SUNITA HOLZER, KEVIN O'DOWD, CHRISTOPHER PALADINO, MICHAEL J. RENNA, FRANK L. SIMS,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20 (a) of the Securities Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Thomas Przyborowski ("Plaintiff"), by and through his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against South Jersey Industries, Inc. ("South Jersey Industries" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants,"), for violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act as a result of the Individual Defendants' efforts to sell the Company to Infrastructure Investments Fund through its affiliate NJ Boardwalk Holdings LLC ("Parent" or

"IIF" and collectively with South Jersey Industries, the Individual Defendants, the "Defendants") as a result of an unfair process for an unfair price and to enjoin an upcoming stockholder vote on a proposed stock and cash transaction acquiring all of the Company's remaining outstanding shares (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an February 23, 2022 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent, a company which is controlled by IIF, will acquire all of the remaining outstanding shares of South Jersey Industries' common stock for $36.00 in cash. As a result, South Jersey Industries will become an indirect wholly-owned subsidiary of IIF.

3.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

4.      Thereafter, on March 30, 2022, Resonant filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction. On April 11, 2022, Resonant filed a Definitive Proxy Statement on Schedule DEFM14A (the "Definitive Proxy Statement" and collectively with the Preliminary Proxy Statement "Proxy Statement") with the SEC in further support of the Proposed Transaction.

5.      The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to IIF.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and

- 2 -
COMPLAINT

executive officers will be able to exchange all Company equity awards for the merger consideration.

7.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement on March 30, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to vote their South Jersey Industry shares in favor of the Proposed Transaction. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for South Jersey Industries, provided by South Jersey Industries to the Company's financial advisors BofA Securities, Inc. ("BofA"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA and provided to the Company and the Board.

8.     Accordingly, this action seeks to enjoin the Proposed Transaction.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

10.    Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a South Jersey Industries stockholder.

11.    Defendant South Jersey Industries, Inc., through its subsidiaries, provides energy-related products and services. South Jersey Industries is incorporated in New Jersey and has its

principal place of business at 1 South Jersey Plaza, Folsom, New Jersey 08037. Shares of South Jersey Industries common stock are traded on the Nasdaq Stock Exchange under the symbol "SJI."

12. Defendant Joseph M. Rigby ("Rigby") has been a Director of the Company at all relevant times.

13. Defendant Michael J. Renna ("Renna") has been a director of the Company at all relevant times. In addition, Renna serves as the Company's Chief Executive Officer ("CEO") and President.

14. Defendant G. Edison Holland ("Holland") has been a director of the Company at all relevant times.

15. Defendant Kevin M. O'Dowd ("O'Dowd") has been a director of the Company at all relevant times.

16. Defendant Christopher J. Paladino ("Paladino") has been a director of the Company at all relevant times.

17. Defendant Sheila Hartnett-Devlin ("Hartnett-Devlin") has been a director of the Company at all relevant times.

18. Defendant Victor A. Fortkiewicz ("Fortkiewicz") has been a director of the Company at all relevant times.

19. Defendant Sunita Holzer ("Holzer") has been a director of the Company at all relevant times.

20. Defendant Sarah Morrison Barpoulis ("Siekerka") has been a director of the Company at all relevant times.

21. Defendant Frank L. Sims ("Sims") has been a director of the Company at all relevant times.

22. The defendants identified in paragraphs 6 through 21 are collectively referred to herein as the "Individual Defendants."

23. Non-Party Infrastructure Investments Fund (IIF) is an approximately $20 billion private investment vehicle focused on investing in critical infrastructure assets.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a). This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

25. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and because South Jersey Industries is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

27. South Jersey Industries, Inc., through its subsidiaries, provides energy-related products and services. The company engages in the purchase, transmission, and sale of natural gas. It also sells natural gas and pipeline transportation capacity on a wholesale basis to residential, commercial, and industrial customers on the interstate pipeline system, as well as transports natural

gas purchased directly from producers or suppliers to customers. As of December 31, 2021, the company had approximately 147 miles of mains in the transmission system and 6,815 miles of mains in the distribution system; and served 384,062 residential, commercial, and industrial customers in southern New Jersey. In addition, it markets natural gas storage, commodity, and transportation assets on a wholesale basis for energy marketers, electric and gas utilities, power plants, and natural gas producers in the mid-Atlantic, Appalachian, and southern regions of the United States. Further, the company owns and operates rooftop solar-generation sites. Additionally, it owns oil, gas, and mineral rights in the Marcellus Shale region of Pennsylvania; acquires and markets natural gas and electricity to retail end users, as well as provides total energy management, fuel management, and energy procurement and cost reduction services. The Company was founded in 1910 and is headquartered in Folsom, New Jersey.

28. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results. For example, in the November 3, 2021 Press Release announcing its 2021 Q3 financial results, the Company highlighted The advancement of key initiatives in Pre-construction engineering and permitting of LNG redundancy project has commenced. Further, it highlighted that its SJG Infrastructure Investment Program (IIP) proposal was progressing toward resolution.

29. Defendant CEO Renna commented on the results in the Press Release, "Our utility and non-utility businesses continue to perform very well and we remain on track to achieve our financial goals in 2021," ….. "Our regulatory initiatives and clean energy investments targeting enhanced infrastructure safety, reliability and decarbonization for the benefit of our more than 700,000 New Jersey customers and our region continue to advance. My thanks, as always, to our entire team for their exceptional work and continued dedication to our mission," added Renna.

30. Despite this successful year and positive outlook, the Individual Defendants have caused South Jersey Industries to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

31. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32. Notably, while the Proxy Statement indicates that a "Transaction Committee" was created to run the sales process, it failed to affirmatively indicate if all such members of the Transaction Committee were independent and disinterested directors. The Proxy Statement also fails to indicate the specific powers of this committee, including if it has the power to approve or veto potential strategic alternatives in advance of a review by the full Board.

33. Additionally, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and IIF, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

34. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

35.     On July 28, 2021, South Jersey Industries and IIF issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **FOLSOM, NJ, and NEW YORK, February 24, 2022** – South Jersey Industries, Inc. (NYSE: SJI) (SJI) and the Infrastructure Investments Fund (IIF), a private investment vehicle focused on investing in critical infrastructure assets, today announced that they have entered into a definitive agreement under which IIF will purchase SJI for $36.00 per share in cash, reflecting an enterprise value of approximately $8.1 billion.
>
> "As energy markets across the U.S. and New Jersey accelerate the transition toward low carbon and renewable energy, the SJI Board determined that now is the opportune time to join forces with IIF," said Mike Renna, President and CEO, SJI. "IIF is a trusted partner and long-term investor in utility and renewable energy companies, and together we will be well positioned to execute on SJI's clean energy and decarbonization initiatives in support of the environmental goals of our State and region. In addition, as a private company and with IIF's support, we will have additional resources to continue to modernize our critical infrastructure, maintain our high standard of customer service at reasonable rates, and further enhance the safety, reliability and sustainability of our businesses."
>
> Mr. Renna continued, "This transaction is a testament to the achievements of our employees, and we are pleased that IIF recognizes the strength of our workforce and culture and shares our commitment to supporting the communities we serve. I would like to thank each of our employees for all they do each day to contribute to the success of SJI. I look forward to building on our strong foundation together."
>
> IIF's long-term approach to investing in utility and infrastructure assets is directly aligned with SJI's mission to "build a better today and tomorrow" for the more than 700,000 families and businesses SJI serves, while continuing to support its 1,100-employee workforce and the communities in which SJI operates. SJI and IIF will work together to advance SJI's sustainability goals while SJI continues to provide excellent customer service, maintains an outstanding team and culture, and delivers on its commitment to improving the quality of life for all those who live and work in the communities it serves.
>
> Andrew Gilbert, Investment Principal to IIF, said, "SJI has established itself as a leader among its peers, distinguished by the strength of its utilities and ability to provide quality service to its customers. SJI's long track record of investing in sustainability and clean energy initiatives has translated into a clear competitive advantage. We believe our expertise, resources and experience can help SJI further build on its leading position in the industry. We have great respect for SJI's talented

team and look forward to partnering with them to safely provide clean and reliable energy to the communities of New Jersey."

### Leadership and Headquarters

Following the close of the transaction, SJI will remain locally managed and operated with headquarters in Folsom, New Jersey. Mike Renna will continue as Chief Executive Officer and the current management team will continue to lead SJI.

### Terms of the Transaction

The per share purchase price of $36.00 represents a 46.3% premium to SJI's 30-day VWAP as of February 23, 2022, the last trading day prior to the announcement of the agreement. The transaction was unanimously approved by SJI's Board of Directors and is expected to close in the fourth quarter of 2022, subject to the approval of SJI's shareholders, the receipt of regulatory approvals, including by the New Jersey Board of Public Utilities, and other customary closing conditions. Dividends payable to SJI shareholders are expected to continue in the ordinary course until the closing, subject to approval by SJI's Board of Directors. Upon completion of the transaction, SJI's shares will no longer trade on the New York Stock Exchange, and SJI will become a private company.

*Potential Conflicts of Interest*

36. The breakdown of the benefits of the deal indicate that South Jersey Industries insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of South Jersey Industries.

37. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for

|   | Number of Shares of Common Stock (1) | Percent of Class |
|---|---|---|

| Name | Shares | |
|---|---|---|
| Sarah M. Barpoulis | 40,632(2)(3) | * |
| Steven R. Cocchi | 18,166(2) | * |
| Victor A. Fortkiewicz | 46,072(2)(3) | * |
| Sheila Hartnett-Devlin | 18,132(2)(3) | * |
| G. Edison Holland, Jr. | 11,034(2)(3) | * |
| Sunita Holzer | 42,828(2)(3) | * |
| Kevin M. O'Dowd | 9,014(2) | * |
| Melissa J. Orsen | 12,528(2)(3) | * |
| Christopher J. Paladino | 7,598(2)(3) | * |
| Michael J. Renna | 178,278 | * |
| Joseph M. Rigby | 25,503(2)(3) | * |
| David Robbins, Jr. | 73,828 | * |
| Frank L. Sims | 95,520(2)(3) | * |
| Eric Stein | 3,329(2) | * |
| All directors, nominees for director and executive officers as a group (14 persons) | 582,461(2) | * |

38.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Number of Shares Subject to TRSUs That Have Not Vested | Payment upon Merger[1] |
|---|---|---|
| Sarah Barpoulis | 5,836 | $210,096 |
| Victor Fortkiewicz | 5,836 | $210,096 |
| Sheila Hartnett-Devlin | 5,836 | $210,096 |
| G. Edison Holland Jr. | 5,836 | $210,096 |
| Sunita Holzer | 5,836 | $210,096 |

| | | |
|---|---|---|
| Kevin O'Dowd | 5,836 | $210,096 |
| Christopher Paladino | 5,836 | $210,096 |
| Joseph Rigby | 8,337 | $300,132 |
| Frank Sims | 5,836 | $210,096 |

39. Moreover, certain employment agreements with certain South Jersey Industries executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, and will be paid out as follows:

| Name | Cash[1] | Equity[2] | Perquisites/Benefits[3] | Total |
|---|---|---|---|---|
| Michael J. Renna | $5,490,351 | $7,070,403 | $117,375 | $12,678,129 |
| Steven R. Cocchi | $1,556,085 | $1,448,234 | $71,306 | $3,075,625 |
| David Robbins Jr. | - | $546,057 | - | $546,057 |
| Melissa J. Orsen | $1,438,715 | $1,249,435 | - | $2,688,150 |
| Eric Stein | $1,064,661 | $764,722 | $73,011 | $1,902,394 |

40. The Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

41. Thus, while the Proposed Transaction is not in the best interests of South Jersey Industries, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

42. On March 30, 2022, the South Jersey Industries Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

43. Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Adequate and specific information as to if the Transaction Committee was composed of directors who were independent and disinterested;

   b. Adequate and specific information regarding the specific powers of the Transaction Committee;

   c. Whether the confidentiality agreements entered into by the Company with IIF differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

   d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including IIF, would fall away; and

   e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning South Jersey Industries' Financial Projections*

44. The Proxy Statement fails to provide material information concerning financial projections for South Jersey Industries provided by South Jersey Industries management to the Board and BofA and relied upon by BofA in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

45. Notably the Proxy Statement reveals that as part of its analyses, BofA reviewed, "reviewed certain internal financial and operating information with respect to the business, operations and prospects of the Company furnished to or discussed with BofA Securities by the management of the Company, including the Company Forecasts, which are summarized in the section entitled "Forward-Looking Financial Information."

46. Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that South Jersey Industries management provided to the Board and BofA. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

47. With regard to the *Company Forecasts* Projections prepared by South Jersey Industries, the Proxy Statement fails to disclose material line items for the following metrics:

    a. Adjusted EBIT, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, and income taxes, unburdened for impairment charges;

    b. Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, income taxes, depreciation and amortization, unburdened for impairment charges; and

    c. Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest, tax, the specific inputs and assumptions used to determine the reduced tax impact rate of 27.6%, depreciation and amortization, capital expenditures, change in net working capital, tax savings from net operating losses, and specific other cash inflows or outflows.

48. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

49. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the BofA's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

51. In the Proxy Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the following:

   a. The specific inputs and assumptions used to determine the 2022E Equity Market Value/Net Income multiple reference range of 15.5x to 17.5x as applied to the Company's estimated earnings per share for fiscal year 2022;

   b. The specific inputs and assumptions used to determine the 2023E Equity Market Value/Net Income multiple reference range of 14.5x to 16.5x to the Company's estimated earnings per share for fiscal year 2023; and

   c. The specific inputs and assumptions used to determine the 2022E EV/EBITDA multiple reference range of 10.0x to 14.0x to the Company's estimated EBITDA for fiscal year 2022.

53. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the following:

   a. The specific inputs and assumptions used to determine the EV/LTM EBITDA multiple reference range of 12.50x to 14.75x to the Company's EBITDA for fiscal year 2021; and

   b. The specific date on which each precedent transaction closed.

54. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose the following:

   a. Regarding the *WholeCo* analysis:

      i. The specific inputs and assumptions used to determine the utilized discount rate range of 4.50% to 5.50%;

      ii. The specific inputs and assumptions used to determine the utilized weighted average cost of capital range of 4.4% to 5.3%;

      iii. The risk-free rate utilized;

  iv. The levered beta utilized;

  v. The applicable equity market risk premium utilized;

  vi. The estimated marginal tax rate utilized;

  vii. The specific terminal value for the Company calculated; and

  viii. The specific inputs and assumptions used to determine the utilized P/E multiple reference range of 15.5x to 17.5x.

 b. Regarding the *Utility Segment* analysis:

  i. The specific inputs and assumptions used to determine the utilized discount rate range of 4.25% to 5.25%;

  ii. The specific inputs and assumptions used to determine the utilized weighted average cost of capital range of 4.3% to 5.1%;

  iii. The risk-free rate utilized;

  iv. The levered beta utilized;

  v. The applicable equity market risk premium utilized;

  vi. The estimated marginal tax rate utilized;

  vii. The specific terminal value for the Utility Segment calculated; and

  viii. The specific inputs and assumptions used to determine the utilized P/E multiple reference range of 18.0x to 20.0x;

 c. Regarding the *Non-Utility Segment* analysis:

  i. The specific inputs and assumptions used to determine the utilized discount rate range of 8.5% to 10.5%;

  ii. The specific inputs and assumptions used to determine the utilized weighted average cost of capital range of 8.2% to 10.6%;

  iii. The risk-free rate utilized;

  iv. The levered beta utilized;

  v. The applicable equity market risk premium utilized;

  vi. The estimated marginal tax rate utilized;

      vii.    The specific terminal value for the Non-Utility Segment calculated; and

      viii.    The specific inputs and assumptions used to determine the utilized P/E multiple reference range of 9.5x to 13.0x

55.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public South Jersey Industries stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57.    Plaintiff repeats all previous allegations as if set forth in full herein.

58.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

59.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of South Jersey Industries, to solicit or to permit the use of his name

to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Registration Statement not misleading.

64. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in

favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Directing the Individual Defendants to comply with the Exchange Act to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading

    D.    Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

    E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    F.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 14, 2022

**BRODSKY SMITH**

By: _____
Evan J. Smith
esmith@brodskysmith.com
Marc L. Ackerman
mackerman@brodskysmith.com
1310 Kings Highway N.
Cherry Hill, NJ 08034
T: (856) 795-7250
F: (856) 795-1799

*Attorneys for Plaintiff*